In re Theresa CIAVARELLI a/k/a Theresa Routzahn Ciavarelli, Debtor.

STRAWBRIDGE & CLOTHIER (a corporation), Plaintiff,

v.

Theresa CAIVARELLI a/k/a Theresa Routzahn Ciavarelli *, Defendant.

Bankruptcy No. 81–02826G.
Adv. No. 81–1219G.

United States Bankruptcy Court, E. D. Pennsylvania.

Jan. 6, 1982.

Barry N. Sklar, Sklar, Lichtenstein & Sklar, P.C., Philadelphia, Pa., for plaintiff, Strawbridge & Clothier.

Richard H. Anderson, Media, Pa., for debtor/defendant, Theresa Ciavarelli a/k/a Theresa Routzahn Ciavarelli.

Leonard P. Goldberger, Fox, Rothschild, O'Brien & Frankel, Philadelphia, Pa., trustee.

## OPINION

EMIL F. GOLDHABER, Bankruptcy Judge:

The issue at bench is whether the debt of $1,200.00 incurred by the debtor through the use of her credit card within three weeks of the filing of the petition for relief under chapter 7 of the Bankruptcy Code ("the Code") is nondischargeable pursuant to § 523(a)(2)(A) of the Code. We conclude that, under the circumstances of this case, such debt is nondischargeable.

---

* The spelling of the defendant's name in the complaint appears to be a typographical error, since it varies from the spelling in the petition for relief.

The facts of the instant case are as follows:[1] In September of 1979, Theresa Ciavarelli ("the debtor") applied for and was issued a credit card by Strawbridge & Clothier ("the creditor"). Between the date of issuance and May, 1981, the debtor made various purchases and payments on account of existing balances. During that time, the debtor never made any monthly purchases in excess of $150.00 (after payments). As of June 30, 1981, the balance due on the debtor's credit card account was $627.50. On July 3 and July 6, 1981, the debtor purchased some 45 items with her credit card at three of the creditor's stores which totalled $1,239.94. In the middle of July, the salary of the debtor's husband was reduced in half. Thereafter, on July 16, 1981, the debtor consulted an attorney about her financial condition and, on July 20, 1981, she filed a petition for relief under chapter 7 of the Code.[2] The creditor subsequently filed the instant complaint to determine the dischargeability of the $1,239.94 debt owed to it.[3]

Section 523(a)(2)(A) of the Code provides: (a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

.  .  .  .  .

(2) for obtaining money, property, services, or an extension, renewal, or refinance of credit, by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

The courts have interpreted that section to require the plaintiff/creditor to prove that (1) the debtor made a materially false representation, (2) with the intent to deceive and (3) the creditor relied on that false representation. See, e.g., In re Schnore, 13 B.R. 249 (W.D.Wis.1981); In re Poteet, 12

B.R. 565 (N.D.Tex.1981); In re Pitts, 10 B.R. 557 (M.D.Fla.1981).

The courts have held further that, whenever a credit card holder uses his credit card, he is representing that he has both the ability and the intention to pay for those purchases and the credit card issuer relies on those implied representations in extending credit to the card holder. See, e.g., In re Vegh, 14 B.R. 345 (S.D.Fla.1981); In re Schnore, supra; In re Poteet, supra; In re Pitts, supra; In re Schartner, 7 B.R. 885 (N.D.Ohio 1980); In re Stewart, 7 B.R. 551 (M.D.Ga.1980). Thus, the creditor must usually only establish that the debtor used his credit card to deceive the creditor into believing that the debtor could and would repay the debt when, in fact, the debtor did not intend to do so.

As the United States Bankruptcy Court for the Middle District of Georgia stated in In re Stewart, supra :

Intention [to deceive] of course is a very subjective thing and in most instances can only be shown circumstantially. Nonetheless, if the appropriate factors are shown the Court, this intention may be established. Factors for which to look are:

1. the length of time between the charges made and the filing of bankruptcy;

2. whether or not an attorney has been consulted concerning the filing of bankruptcy before the charges were made;

3. the number of charges made;

4. the amount of the charges;

5. the financial condition of the debtor at the time the charges are made; and

---

1. This opinion constitutes the findings of fact and conclusions of law required by Rule 752 of the Rules of Bankruptcy Procedure.

2. The debtor's husband did not join in her petition for relief. The debtor testified that that was because all of their debts were in her name alone.

3. Although the creditor claims that the debtor owes it an additional $627.50 (the balance due as of June 30, 1981), it does not assert that that debt is nondischargeable.

6. whether the charges were above the credit limit of the account.

7 B.R. at 554–55 (footnote omitted).

■ In the instant case, we conclude that all of those factors indicate that the debtor used her credit card with the intention of deceiving the creditor. The debtor made all of the purchases at issue on two days within two weeks of the date her husband's salary was drastically cut and within three weeks of the date she filed a petition for relief under the Code. Although the debtor testified that she did not know her husband's salary was to be cut and did not consult an attorney about the possibility of bankruptcy until *after* she made those purchases, we find that testimony to be somewhat incredible. Generally, a person is aware some time in advance when her spouse's salary is going to be reduced and when bankruptcy is the only alternative.[4] Therefore, we conclude that, at the time she made the purchases on July 3 and 6, 1981, the debtor knew that she would be unable to pay for them and, in fact, intended not to pay for them but intended to file a petition for relief instead.

This conclusion is further supported by a consideration of the number of purchases, the amount of those purchases and the types of purchases made by the debtor. On each of two days, the debtor went to three of the creditor's stores, which were within a short distance of each other and two of which sold the identical items, and bought 45 items (many of them identical or similar) worth $1,239.94. Furthermore, the items purchased were, for the most part, luxury items (candy, camera equipment) and not necessities.[5] When we consider the debtor's actions in light of her prior use of this credit card (the debtor never purchased more than $150.00, after payments, in any month prior to July, 1981), the conclusion is inescapable that the debtor made these purchases without intending to pay for them and in contemplation of filing a petition for relief under the Code. Consequently, we conclude that the debt of $1,239.94 owed to Strawbridge & Clothier is nondischargeable pursuant to § 523(a)(2)(A) of the Code.[6]

---

incurred in a two month shopping spree by debtor); *In re Poteet*, 12 B.R. 565 (N.D.Tex. 1981) (held nondischargeable credit card debt of $6,653.65 incurred by debtors within 1½ months of filing for relief); *In re Pitts*, 10 B.R. 557 (M.D.Fla.1981) (held nondischargeable credit card debt of $3,808.14 incurred after debtor lost his job and within 2 months of filing for relief); *In re Wright*, 8 B.R. 625 (S.D.Ohio 1981) (held nondischargeable credit card debt of $1,509.17 incurred within two weeks of date debtor's husband lost his job and within 3 months of filing for relief); *In re Schartner*, 7 B.R. 885 (N.D.Ohio 1980) (held nondischargeable credit card debt of $2,720.39 incurred by debtor in a 4 week period); *In re Stewart*, 7 B.R. 551 (M.D.Ga.1980) (held nondischargeable credit card debt of $432.60 incurred by debtor within 1 month of filing for relief).

---

4. *See In re Wright*, 8 B.R. 625 (S.D.Ohio 1981) in which the court declined to believe the debtor's testimony that she was not aware in advance that her husband would lose his job when she made substantial credit card purchases ($1,500.00 worth) five days before he lost his job and within three months of filing a petition for relief under the Code.

5. *Cf. In re Brashears*, 12 B.R. 136 (S.D.Miss. 1981) (bankruptcy court held that purchase of $115.77 worth of necessities in the month prior to filing for relief did not give rise to a finding of intent to deceive on the debtor's part).

6. *See, e.g., In re Vegh*, 14 B.R. 345 (S.D.Fla. 1981) (held nondischargeable a credit card debt of $34,573.18 incurred by unemployed debtor within 1 month of filing for relief); *In re Schnore*, 13 B.R. 249 (W.D.Wis.1981) (held nondischargeable credit card debt of $3,467.54